## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES RICE KENDALL and ANN P. HOCHBERG, as Trustees for The Thomas E. Proctor Heirs Trust, | Civil Action No. 20-cv-00838 |
| Plaintiffs, | |
| v. | Hon. Jennifer P. Wilson United States District Judge |
| ALTA MARCELLUS DEVELOPMENT, LLC, ARD OPERATING, LLC, INTERNATIONAL DEVELOPMENT CORP., and SWN PRODUCTION COMPANY, LLC, | |
| Defendants. | |

## BRIEF IN SUPPORT OF PLAINTIFFS'
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Justin G. Weber (PA 89266)
TROUTMAN PEPPER
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
717.255.1155
717.238.0575 (fax)
Justin.Weber@troutman.com

Laura A. Lange (PA 310733)
1670 Sturbridge Drive
Sewickley, PA 15143
lange@proctortrust.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................1

Procedural History...........................................................................3

Statement of Facts...........................................................................3

    A.    Thomas E. Proctor's Interest in the Premises. ...................3

    B.    CPLC's Acquisition of the Surface Estate and Cotenant Interest in the Premises...........................................................5

    C.    The Proctor Subsurface Estate Was Separately Assessed. .................6

    D.    CPLC Allows Tax Sales of the Surface Estate. ...................7

    E.    The 1930s Tax Sales Deeds Were Redeemed....................9

QUESTIONS INVOLVED..............................................................13

LEGAL STANDARD .....................................................................14

ARGUMENT ...................................................................................15

    I.    The 1930s Mineral Rights Tax Sale Deeds Were Redeemed. ...........15

    II.    The Title to the Subsurface of the No Sale Properties, Separately Assessed Properties and Cotenant Properties Belongs to the PHT. ..........................................................17

        A.    Because there were no CPLC Tax Sales of the No Sale Properties, title remains in the PHT........................................17

        B.    The CPLC Tax Sales could never alter the title to the Separately Assessed Properties................................................17

        C.    CPLC could not acquire the Subsurface Estate of the Cotenant Properties................................................................20

CONCLUSION................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................ 14

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*,
    691 F.3d 294 (3d Cir. 2012) ............................................................. 14

*New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*,
    278 F.2d 577 (3d Cir. 1960) ............................................................. 19

*New York State Natural Gas Corp. v. Swan-Finch Gas Development
    Corp.*,
    173 F.Supp. 184 (W.D. Pa. 1959) .................................................... 16

*Pappas v. City of Lebanon*,
    331 F. Supp. 2d 311 (M.D. Pa. 2004) ............................................. 14

*Thomas v. Cumberland County*,
    749 F.3d 217 (3d Cir. 2014) ............................................................. 14

**Pennsylvania Cases**

*Beers v. Pusey*,
    132 A.2d 346 (Pa. 1957) ...................................................... 20, 21, 22

*In re Brown's Estate*,
    2 Pa. 463 (Pa. 1846) .......................................................................... 22

*Church v. Church*,
    25 Pa. 278 (Pa. 1855) ................................................................. 22, 23

*City of Phila. v. Miller*,
    126 A.2d 812 (Pa. Super. 1956) ....................................................... 15

*Collins v. Wilkinson*,
    76 A.2d 649 (Pa. 1950) ..................................................................... 15

*Coxe v. Sartwell*,
    21 Pa. 480 (1853) ................................................................16

*Faust v. Heckler*,
    58 A.2d 147 (Pa. 1948) .................................................20, 21

*Herder Spring Hunting Club v. Keller*,
    143 A.3d 358 (Pa. 2016) ....................................................19

*Hunt v. Mestrezat*,
    65 A.2d 389 (Pa. 1949) ......................................................15

*Lund v. Heinrich*,
    189 A.2d 581 (Pa. 1963) ....................................................20

*Maul v. Rider*,
    51 Pa. 377 (Pa. 1865) ........................................................20

*Powell v. Lantzy*,
    34 A. 450 (Pa. 1898) ..........................................................19

*Sanderson v. City of Scranton*,
    105 Pa. 469 (1888) .............................................................19

*Tanney v. Tanney*,
    28 A. 287 at 287-89 (Pa. 1893) ......................................21, 22

*Weaver v. Wible*,
    25 Pa. 270 (1855) ..............................................................20

*Yocum v Zahner*,
    29 A. 778 (Pa. 1894) ..........................................................15

**Pennsylvania Statutes**

Act of May 29, 1931, 72 P.S. § 5971o ...........................................15, 17

Act of April 13, 1911 ....................................................................16

Act of March 13, 1815 ...................................................................15

## INTRODUCTION

Prior to 1894, Thomas E. Proctor acquired substantial tracts of land in Lycoming and Sullivan counties, including the 44 tracts at issue in this action (the "Premises").  In October 1894, Mr. Proctor sold the surface of the Premises, excepting and reserving unto himself and his heirs the oil, gas and mineral rights (the "Subsurface Estate")—rights that are now owned by the Thomas E. Proctor Heirs Trust (the "PHT").

Now, over a century later, Defendants International Development Corporation ("IDC"), SWN Production Company, LLC ("SWN"), Alta Marcellus Development, LLC and ARD Operating, LLC ("Alta") claim the subsurface rights to the Premises through certain tax sales of their predecessor in interest, the Central Pennsylvania Lumber Company ("CPLC").  In this Motion for Partial Summary Judgment, the PHT seeks to narrow the issues in this case and quiet title to 31 of the 44 tracts in which the material facts are undisputed.  The PHT is entitled to summary judgment regarding the 31 tracts for two reasons.

First, as a threshold matter, Defendants' claims stem from 1936 and 1938 tax sales of "mineral rights" assessed to CPLC (the "1930s Tax Sales"), which Defendants believe were acquired by their predecessors in interest.  However, all of the 1930s Tax Sales were redeemed—a legal process by which tax and costs are paid after the sale and the tax sale is nullified—in the 1950s.

Second, as a result of the redemptions, title to the subsurface rights remained as though the sales had not been made.  To the extent Defendants claim that earlier tax sales and purchases by CPLC of its surface estate encompassed the severed Subsurface Estate (the "CPLC Tax Sales"), they are wrong.  Regarding 31 of those tracts, title unquestionably rests with the Proctor heirs:

- Four tracts within the Premises were never subject to a CPLC Tax Sale ("No Sale Properties"), meaning that CPLC never could have acquired the subsurface rights under any legal theory.

- Ten tracts within the Premises were subject to separate assessments of the Subsurface Estate ("Separately Assessed Properties").  The caselaw makes clear that a tax sale of the surface estate can never encompass a *separately assessed* subsurface estate.

- Seventeen tracts within the Premises were owned by both CPLC and the Proctor heirs as cotenants, with CPLC owning an undivided 3/4 interest and the Proctor heirs owning an undivided 1/4 interest in the Subsurface Estate ("Cotenant Properties").  The law prohibits a cotenant from acquiring title adverse to its other cotenants, including by means of a tax sale.  Therefore, CPLC's reacquisition of these Cotenant Properties following a tax sale inures to the benefit of the Proctor heirs.

Accordingly, the Court should grant the PHT's motion for partial summary judgment, and declare that the PHT is the lawful owner of its proportionate share of the Subsurface Estate of the No Sale Properties, the Separately Assessed Properties and the Cotenant Properties.

## Procedural History

The PHT initiated this action on May 22, 2020.  The operative Second Amended Complaint was filed on October 9, 2020.  (ECF No. 43).  Defendants IDC and SWN filed answers (ECF Nos. 47-48), but the Alta Defendants moved to dismiss an alternative theory of relief under Count II, the quiet title claim.  (ECF No. 52).[1]  The PHT now seeks partial summary judgment, requesting judgment in its favor on 31 of the 44 warrants at issue in this case.

## Statement of Facts

**A.    Thomas E. Proctor's Interest in the Premises.**

Prior to October 1894, Thomas E. Proctor was the owner of fee interests in more than 44 tracts of land, comprising in excess of 17,000 acres in Lycoming County and Sullivan County, Pennsylvania (the "Premises").  Statement of Facts ("SOF") ¶ 2.  Of the 44 tracts at issue in this case, Proctor owned the entirety of 22

---

[1] Alta's pending motion to dismiss a portion of the quiet title claim under the alternative theory under Rule 1061(b)(2) does not impact the Court's ability to enter relief here.  The PHT also brings a quiet title claim for all tracts under Rule 1061(b)(3), which is not impacted by Alta's motion.

tracts ("Proctor 100% Interest Lands") and an undivided one-quarter interest in the

remaining 22 tracts ("Proctor 1/4 Interest Lands").  SOF ¶ 3.

The Proctor 100% Interest Lands are identified by the following warrant

names:

1) Hugh Lennox, McNett Township
2) William Shaw, McNett Township
3) Samuel Dale, McNett Township
4) John Bayard, McNett Township
5) Robert Smith, McNett Township
6) William Barton, McNett Township
7) Stephen Bayard, McNett Township
8) Daniel Long, McNett Township
9) Aaron Levy, McIntyre Township
10) John Singer, McIntyre Township (Asylum Land Company No. 410)
11) John Price, McIntyre Township (Asylum Land Company No. 418)
12) William Chancellor, McIntyre Township (Asylum Land Company No. 419)
13) Walter Stewart, McIntyre Township (Asylum Land Company No. 427)
14) Robert Shaw, McIntyre Township (Asylum Land Company No. 428)
15) Samuel Miles Jr., McIntyre Township (Asylum Land Company No. 434)
16) Jacob Morgan, McIntyre Township (Asylum Land Company No. 435)
17) William Stewart, McIntyre Township (Asylum Land Company No. 436)
18) Michael Gratz, McIntyre Township (Asylum Land Company No. 437)
19) Rowland Perry, Cascade Township
20) James Reynolds, Cascade Township
21) William James, Gamble Township
22) Michael Hillegas, Fox Township, Sullivan County

SOF ¶ 4.

The Proctor 1/4 Interest Lands are identified by the following warrant

names:

1)   Josiah Harmer, Cascade and McNett Townships
2)   Mary Garity, Cascade and McNett Townships
3)   Daniel Delaney, Cascade and McNett Townships
4)   David George, McIntyre Township
5)   Peter Miller, Cascade Township
6)   Thomas George, Cascade Township
7)   George Barclay, Cascade Township
8)   George Tudor, Cascade Township
9)   Joseph Thomas, Cascade Township
10)  Joseph Fox, Cascade Township
11)  Jonathan Supple, Cascade Township
12)  Robert Rankin, Cascade and McIntyre Townships
13)  Algernon Roberts, McIntyre Township
14)  Edward George, Cascade Township
15)  John Hawkins, Cascade Townships
16)  William Lewis, Cascade and McNett Townships
17)  Sampson Levy, Cascade Township
18)  Clement Biddle, Cascade Township
19)  Edward Tilgham, Cascade Township
20)  Benjamin Smith, Cascade and McNett Townships
21)  Jonathan Mifflin, Plunketts Creek Township
22)  William Rawle, Cascade Township

SOF ¶ 5.  The combined 44 tracts of land comprise the "Premises" at issue in this

lawsuit.

## B.    CPLC's Acquisition of the Surface Estate and Cotenant Interest in the Premises.

In October 1894, Proctor and his wife conveyed the surface estate of the

Premises to the Elk Tanning Company ("Elk"), excepting and reserving ("the

Proctor Reservation") unto themselves, their heirs and assigns "all the natural gas, coal, coal oil, petroleum, marble and all minerals of every kind and character in, upon, or under the said land" (*i.e.,* the "Subsurface Estate").  SOF ¶¶ 6-7.

In 1899, Elk acquired the remaining 3/4 interest in the Proctor 1/4 Interest Lands from Proctor's cotenant.  SOF ¶ 11.  Following this transaction, Elk owned the entirety of the surface estate and an undivided 3/4 interest in the Subsurface Estate of the 22 tracts comprising the Proctor 1/4 Interest Lands.  SOF ¶ 12.

In May 1903, Elk conveyed its interest in the Premises to its corporate affiliate CPLC.  SOF ¶ 14.  Following this transaction, CPLC and the Proctor heirs were cotenants of the Subsurface Estate of the Proctor 1/4 Interest Lands, with the Proctor heirs owning an undivided 1/4 interest and CPLC owning an undivided 3/4 interest.  SOF ¶ 16.

## C.   The Proctor Subsurface Estate Was Separately Assessed.

The Subsurface Estate of ten warrants within the Premises, all located in McIntyre Township, Lycoming County, were separately assessed in the name of the Proctor heirs.  SOF ¶¶ 17-21.  The separately assessed subsurface tracts include the following 10 tracts (the "Separately Assessed Properties"):

1)     David George
2)     John Singer
3)     John Price
4)     William Chancellor
5)     Walter Stewart
6)     Robert Shaw

      7)     Samuel Miles Jr.

      8)     Jacob Morgan

      9)     William Stewart

      10)   Michael Gratz

SOF ¶ 21.

The 1904 Lycoming County assessment records contain separate assessments of "mineral rights" for the Separately Assessed Properties and identify the Proctor heirs as the owners.  SOF ¶ 17.  The township assessment record contains greater detail.  For example, the 1905 assessment records for McIntyre Township contain separate assessments of the Subsurface Estate for the Separately Assessed Properties and lists the owners as "Emma E. Proctor, James Proctor, Thomas Proctor and others. Owners of the Heirs named 23 tracts of unseated lands, Mineral Rights."  SOF ¶ 18.   The preamble to the assessment states:

> The following tracts of land are assessed to the undersigned as owners of 1905 all coal, ores, oils, salt, water minerals, quarrying stone, marble on, in, and under the tracts of unseated lands situate on, in, and under the tracts of unseated lands situated in McIntyre Township for description of reserve of all minerals Refer to Recorders Office of Lycoming County in Deed Book 144 page 398.

SOF ¶ 19.

**D.**        **CPLC Allows Tax Sales of the Surface Estate.**

Between 1908 and 1928, CPLC allowed hundreds of its properties to be sold at tax sales (the "CPLC Tax Sales").  SOF ¶ 22.  For the tracts that went through CPLC Tax Sales, CPLC had its attorneys, Calvin H. McCauley, Jr. and A.F. Jones,

purchase the tracts at the tax sales.  SOF ¶ 27.  McCauley and Jones then

quitclaimed the properties back to CPLC.  SOF ¶ 28.

With respect to the Premises, CPLC allowed 40 of the 44 tracts to go

through a tax sale between 1908 and 1928.  SOF ¶ 23.  The following four

warrants at issue in this case did not go through a tax sale during CPLC's

ownership of the surface estate of the warrant (the "No Sale Properties"):

1) Josiah Harmer
2) Peter Miller
3) Mary Garity
4) Daniel Delaney

SOF ¶ 24.

At issue in this Motion, the Separately Assessed Properties comprise 10 of

the tracts subject to a CPLC Tax Sale.  SOF ¶ 25.   Additionally, the following 17

tracts subject to a CPLC Tax Sale were owned by CPLC and the Proctor heirs as

cotenants of the Subsurface Estate (the "Cotenant Properties"):[2]

1)    Benjamin Smith
2)    William Lewis
3)    Robert Rankin
4)    Joseph Thomas
5)    George Barclay
6)    Thomas George
7)    William Rawle
8)    Clement Biddle

---

[2] Of the 22 warrants comprising the Proctor 1/4 Interest Lands, four warrants are the No Sale Properties and a fifth warrant falls within the Separately Assessed Properties.

9)    Joseph Fox
10)   Edward George
11)   John Hawkins
12)   Edward Tilghman
13)   George Tudor
14)   Sampson Levy
15)   Jonathan Mifflin
16)   Jonathan Supple
17)   Algernon Roberts

SOF ¶ 26.[3]

As set forth below, the tax sales did not affect the title to the Subsurface Estate of the No Sale Properties, the Separately Assessed Properties, or the Cotenant Properties.

**E.**    **The 1930s Tax Sales Deeds Were Redeemed.**

In 1933, the Commonwealth of Pennsylvania, through its Department of Forests and Waters, purchased the surface estate of the Premises and several other properties owned by CPLC.  SOF ¶ 29.  The deed from CPLC to the Commonwealth provides that it is subject to the reservations of the various deeds into CPLC, including the Proctor Reservation.  SOF ¶¶ 30-31.  The deed also created a new reservation in favor of CPLC, excepting and reserving unto itself any oil, coal and gas then owned by CPLC.  SOF ¶ 32.  With respect to the Premises, at the time of the 1933 sale, CPLC owned only the undivided 3/4 interest

---

[3] The remaining 13 tracts at issue in this case are not subject to the current Motion for Partial Summary Judgment.

in the subsurface of the 22 tracts of land comprising the Proctor 1/4 Interest Lands. SOF ¶ 33.

Following its purchase of the surface estate of the Premises, the Commonwealth reported its ownership of the surface estate to the Lycoming County and Sullivan County taxing authorities so that the lands would be removed from the tax rolls. SOF ¶ 34. After receiving this notification, Lycoming County assessed the "mineral rights" of 39 of the 44 tracts contained within the Premises (the "Mineral Rights Assessments") in the name of CPLC. SOF ¶ 35. At the time of the Mineral Rights Assessments, CPLC owned only a 3/4 interest in the Subsurface Estate of 21 of the 39 tracts assessed. SOF ¶¶ 11-16, 36.

The taxes assessed to CPLC went unpaid and the properties proceeded to tax sales. No tax sale purchaser bid on the properties and CPLC's purported interests were ultimately acquired by the County Commissioners in a series of deeds in 1936 and 1938 (the "1930s Tax Sales"). SOF ¶ 38.

The purported title remained in the County until the properties were redeemed in 1950. SOF ¶¶ 38-40. All of the 1936 and 1938 tax sale deeds are stamped "REDEEMED," signed by the County Treasurer, and attested to by the Recorder of Deeds. SOF ¶ 41. The 1936 and 1938 tax deeds are located in the following Lycoming County deed books:

| Warrant Name | | | Lycoming County Deed Book[4] |
|---|---|---|---|
| **Proctor 100% Lands** | | | |
| 1 | John | Bayard | DB 283, P 287 |
| 2 | Stephen | Bayard | DB 283, P 279; DB 283, P 280 |
| 3 | William | Chancellor | DB 283, P 273 |
| 4 | Samuel | Dale | DB 283, P 287-88; DB 305, 584 |
| 5 | Michael | Gratz | DB 283, P 286; DB 283, P 289 |
| 6 | William | James[5] | DB 283, P 285-86 |
| 7 | Hugh | Lennox | DB 283, P 289 |
| 8 | Aaron | Levy | DB 283, P 290 |
| 9 | Daniel | Long | DB 283, P 277; DB 283, P 285 |
| 10 | Jacob | Morgan | DB 283, P 281-82 |
| 11 | Rowland | Perry | DB 283, P 284-85; DB 305, P 586 |
| 12 | John | Price | DB 283, P 284-85 |
| 13 | James | Reynolds | DB 283, P 281; DB 305, P 597 |
| 14 | Robert | Shaw | DB 283, P 284 |
| 15 | John | Singer | DB 283, P 283 |
| 16 | Robert | Smith | DB 283, P 282-83; DB 283, P 274 |
| 17 | Walter | Stewart | DB 283, P 280-81 |
| 18 | William | Stewart | DB 283, 276 |
| | | | |
| **Proctor 1/4 Interest Lands** | | | |
| 1 | George | Barclay | DB 305, P 582 |
| 2 | Clement | Biddle | DB 305, P 582 |
| 3 | Daniel | Delaney | DB 283, P 279; DB 305, P 584 |
| 4 | Joseph | Fox | DB 305, P 585 |
| 5 | Mary | Garity | DB 305, P 581 |
| 6 | David | George | DB 283, P 288-89; DB 305, P 591 |

---

[4] Certified copies from Lycoming County are included in the PHT's Appendix of Evidence at Exhibit 18.

[5] The tax deed incorrectly references James Williams.

| 7 | Edward | George | DB 305, P 590 |
| 8 | Thomas | George | DB 283, P 287; DB 305, P 590 |
| 9 | Josiah | Harmer[6] | DB 305, 589 |
| 10 | John | Hawkins | DB 305, P 589 |
| 11 | Sampson | Levy | DB 305, P 596 |
| 12 | William | Lewis | DB 305, P 588 |
| 13 | Peter | Miller | DB 305, P 587 |
| 14 | Robert | Rankin | DB 305, P 586; DB 283, P 275 |
| 15 | William | Rawle | DB 305, P 598 |
| 16 | Algernon | Roberts | DB 283, P 282 |
| 17 | Benjamin | Smith | DB 305, P 596 |
| 18 | Jonathan | Supple[7] | DB 305, P 595 |
| 19 | Joseph | Thomas | DB 305, P 594 |
| 20 | Edward | Tilghman | DB 305, P 594 |
| 21 | George | Tudor | DB 305, P 593 |

SOF ¶ 39. The 1950 redemptions nullified the 1936 and 1938 tax sales, rendering title to the Subsurface Estate unaltered.

---

[6] The tax deed incorrectly references Josiah Harmon.

[7] The tax deed incorrectly references Jonathan Suppler.

## <u>QUESTIONS INVOLVED</u>

1.      Whether, as a result of the redemption of the 1930s Tax Sale Deeds, the title remained as it had prior to the tax sales?

Suggested Answer: Yes.

2.      Whether following the redemption of the 1930s Tax Sales, the PHT is the owner of its proportionate share of the Subsurface Estate of the 31 warrants comprising the No Sale Properties, the Separately Assessed Properties, and the Cotenant Properties?

Suggested Answer: Yes.

## **LEGAL STANDARD**

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, "there is no genuine dispute as to any material fact," and the movant "is entitled to judgment as a matter of law." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant" and "material if it could affect the outcome of the case." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)). The non-moving party must come forward with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The evidence demonstrates that the PHT has title to the Subsurface Estate and is entitled to judgment as a matter of law.  As such, the PHT's Motion for Partial Summary Judgment should be granted.

**ARGUMENT**

**I.     The 1930s Mineral Rights Tax Sale Deeds Were Redeemed.**

As a threshold matter, because the 1930s Tax Sale deeds were redeemed, the 1936 and 1938 tax sales were nullified – having no effect on title to the subsurface rights.  Redemption occurs when all the taxes, costs and interest for the period the property is held by the County is paid to the county treasurer.  Act of March 13, 1815, P.L. 177 Sect. VI.  Upon the treasurer's receipt of such payment,

> if said [tax] deed has been recorded in the office for recording of deeds, cause an entry to be made on the margin of the record of the deed in the office of the recorder of deeds, by marking thereon the word 'redeemed', which shall be signed by the county treasurer, and attested by the recorder of deeds, and thereafter said deed shall be void and of no effect.

Act of May 29, 1931, P.L. 280, 72 P.S. § 5971o.

"Redemption operate[s] to set aside or annul the sale," leaving "the title precisely as though the sale had not been made."  *Yocum v Zahner,* 29 A. 778, 779 (Pa. 1894); *see also City of Phila. v. Miller,* 126 A.2d 812, 814 (Pa. Super. 1956) ("[T]he effect of redemption is to place all parties in the position they occupied before the sale.").

Here, because the property subject to the 1930s Tax Sales was sold to Lycoming County, the right to redeem the tax sales "persisted as long as the title remained in the county." *Collins v. Wilkinson*, 76 A.2d 649, 650 (Pa. 1950); *see also Hunt v. Mestrezat*, 65 A.2d 389, 389–90 (Pa. 1949) ("The heirs, under existing

statutes, retained the right to redeem the land so sold for taxes during the period while title still remained in the political subdivision.").[8]  The 1930s Tax Sale deeds were redeemed on April 28, 1950.  SOF ¶ 39. The certified copies of the recorded 1930s Tax Sale deeds are stamped "REDEEMED", signed by the county treasurer, and attested to by the recorder of deeds.  SOF ¶ 40 and Exhibit 18.



Exhibit 18.

Notably, redemption operates to benefit the "rightful owner" of the property regardless of who actually redeems.  *Coxe v. Sartwell*, 21 Pa. 480 (1853) ("the sale is avoided and the redemption enures [sic] to the benefit of the rightful owner as

---

[8] An assessment of "minerals" covers only the minerals owned by the person assessed and only to the extent of his ownership.  *See, e.g., New York State Natural Gas Corp. v. Swan-Finch Gas Development Corp.*, 173 F.Supp. 184, 191-92 (W.D. Pa. 1959) (citing Pennsylvania cases).  Therefore, only CPLC's 3/4 interest in the Subsurface Estate could be conveyed by tax sales assessing CPLC's "mineral" interest.  CPLC did not hold any interest in the Subsurface Estate of 18 of the 39 tracts subject to the mineral rights assessments and therefore, no rights would have been conveyed by those deeds.  *See* Act of April 13, 1911, P.L. 62 (requiring that real estate "shall be assessed for taxation in the name of the owner or owners at the assessment.").  However, the Court need not wade into the purported effect of the 1936 and 1938 tax deeds because they were nullified with the redemptions.

effectually as a payment of taxes by a stranger would have enured [sic] to his

benefit and have defeated a subsequent sale by the treasurer.").  Therefore, because

the 1930s Tax Sales deeds were redeemed, they are "void and of no effect,"

leaving title to the Subsurface of the Premises as though the sales had not been

made.  *See* Act of May 29, 1931, P.L. 280, 72 P.S. § 5971o.

## II.     The Title to the Subsurface of the No Sale Properties, Separately Assessed Properties and Cotenant Properties Belongs to the PHT.

### A.     Because there were no CPLC Tax Sales of the No Sale Properties, title remains in the PHT.

With respect to the No Sale Properties, Proctor reserved the Subsurface

Estate in his deed to Elk Tanning Company and that reservation persisted through

the sale of the surface estate to the Commonwealth.  At no time was the title to the

No Sale Properties subject to a purported tax sale.  Simply put, Defendants have no

claim (through tax sale or otherwise) to the Subsurface of the No Sale Properties.

Accordingly, the PHT holds title to the Subsurface Estate of the No Sale

Properties.

### B.     The CPLC Tax Sales could never alter the title to the Separately Assessed Properties

The Subsurface Estate of the Separately Assessed Properties was assessed in

the name of the Proctor heirs before and after the CPLC Tax Sales of the surface

estate.  SOF ¶¶ 17-21.  The McIntyre township assessment records beginning as

17

early as 1905 – after CPLC's purchase of the Proctor properties from Elk –

recognize the Proctor reservation for several warrants and demonstrate that the

assessors were specifically referred to the severance of the oil, gas and minerals for

all tracts in the "Recorders Office of Lycoming County in Deed Book 144 page

398."   SOF ¶ 18.  The 1907 McIntyre township assessment records – the year of

the CPLC Tax Sales – specifically identify the warrants that comprise the

Separately Assessed Properties as being assessed to the Proctor heirs:



Exhibit 9 at PHT1995.

Because the Proctor interests were separately assessed, the assessment of

CPLC's surface estate ***could never*** encompass the Proctor Subsurface Estate.

"After the severance of the surface from the minerals by a conveyance, they form separate estates.  And each is separately the subject of taxation."  *Powell v. Lantzy,* 34 A. 450, 452 (Pa. 1898); *see also Sanderson v. City of Scranton*, 105 Pa. 469, 469 (1888) ("Where the surface of lands and the minerals in place thereunder have been severed by the agreement or conveyance of the owner, and the respective divisions have become vested in different owners, the municipal authorities are bound to levy their taxes according to the ownership and value of these divisions. And each owner can be made responsible only for the tax on his interest, whether underlying strata or surface.").  "[W]here there is divided ownership of the land" known to the assessors – "there should be a divided taxation."  *Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 364 (Pa. 2016) (quoting *Wilson v. A. Cook Sons. Co.,* 148 A. 63, 64 (Pa. 1929)).

Therefore, the CPLC Tax Sales of the surface estate of the Separately Assessed Properties did not – and could not – encompass the separately assessed Proctor Subsurface Estate.  *New York State Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp.*, 278 F.2d 577, 579 (3d Cir. 1960) ("a tax deed conveys only such interest as was actually assessed to the defaulting taxpayer.").

Accordingly, the PHT holds title to the Subsurface Estate of the Separately Assessed Properties.

**C.      CPLC could not acquire the Subsurface Estate of the Cotenant Properties.**

"It has long been the law in Pennsylvania that where several persons own a joint or common interest in real estate, one of them cannot purchase an encumbrance or an outstanding title and *set it up against the other owners* for the purpose of depriving them of their interests." *Lund v. Heinrich*, 189 A.2d 581, 583 (Pa. 1963) (collecting cases). Thus, "[i]f a tenant in common purchases title to the property at a tax or other judicial sale, such purchase inures to the benefit of all of the cotenants." *Id.*; *see also Beers v. Pusey*, 132 A.2d 346, 348 (Pa. 1957) ("A co-tenant stands in a confidential relationship to all his cotenants. He cannot acquire a title antagonistic to theirs because it is presumed that when he acts he acts for all co-tenants."); *Weaver v. Wible*, 25 Pa. 270, 272 (1855) ("Community of interest produces community of duty…Where several persons have a joint or common interest in an estate, it is not to be tolerated that one shall purchase an encumberance or an outstanding title, and set it up against the rest, for the purpose of depriving them of their interest."); *Maul v. Rider*, 51 Pa. 377, 383–84 (Pa. 1865) (redemption of tax deed by one cotenant inures to the benefit of all cotenants).

This principle applies to subsurface rights. In *Faust v. Heckler*, 58 A.2d 147, 148 (Pa. 1948), the defendant avoided paying the taxes assessed on coal rights and became the purchaser at the tax sale. The Pennsylvania Supreme Court held that "[i]t is elementary…that defendant could not purchase the property at the

treasurer's sale so as to acquire an adverse title depriving his co-tenants of their interest; that purchase inured to the benefit of all the tenants in common." *Id.* at 149. As a result, "[n]otwithstanding the treasurer's deed to [the defendant] the title remained just as it was before the sale in defendant and plaintiffs as co-tenants…." *Id.* at 150.

Here, CPLC and the Proctor heirs were tenants in common with respect to the Subsurface Estate of the Cotenant Properties because they owned an undivided 3/4 and 1/4 interest of the Subsurface Estate respectively. "Anyone who owns an undivided portion of a common treasure is guardian and protector of the entire fortune because the rights of his co-owners are so intermingled and intertwined with his own that he cannot traffic with his share without endangering and hindering the rights of all." *Beers*, 132 A.2d at 348.

That McCauley or Jones acted as the tax sale purchasers does not alter the rule. In *Tanney v. Tanney*, the defendant allowed the cotenant property to be sold at a tax sale, a third-party purchased the property at the tax sale, and then the defendant reacquired the property from the third-party after the redemption period. 28 A. 287 at 287-89 (Pa. 1893). The Court held that the tax sale purchaser's "purchase" was "only nominal" and the "change in title was only in form; the interests of the cotenants remained the same. The deed to the co-tenant, if of any value, inured to the benefit of all, the same as if he had purchased the incumbrance

21

without a sale." *Id.* at 288; *see also Beers*, 132 A.2d at 347 (holding that "[l]aw, equity, and fair dealing all dictate" that the wife of the tenant in common cannot buy property of the tenancy at a tax sale, even with her own money, and obtain a good title against the other tenants).

A cotenant can only acquire the rights following a tax sale of the joint property where the purchaser is a complete stranger to the title, the cotenant did not cause the land to be sold, and the property remained in the stranger for several years beyond the redemption period. *See, e.g., In re Brown's Estate*, 2 Pa. 463, 465–66 (Pa. 1846) (prohibiting cotenant, who refused to redeem the land, but obtained from the tax sale purchaser "an assignment of the treasurer's deed to himself, for his own use" from acquiring the title adverse to his cotenants); *Church v. Church*, 25 Pa. 278, 281–82 (Pa. 1855) ("if the original violator of a trust repossesses himself of an estate thus conveyed, the original equity will reattach to it in his hands…In either case the moment the estate came back into the hands of the wrongdoer the original equity reattached.").

CPLC allowed the Cotenant Properties to be sold at a tax sale through its failure to pay the tax on the surface estate, CPLC's attorneys purchased the properties at the tax sales and reconveyed the properties back to CPLC. SOF ¶¶ 22-28. Regardless of whether McCauley or Jones were agents of CPLC, acting on its behalf or acting out of their own self-interest, they were not strangers. SOF

¶ 27.  Defendants cannot demonstrate otherwise.  More importantly, because CPLC caused the default, once the Cotenant Properties "came back into [its] hands…the original equity reattached."  *Church*, 25 Pa. at 282.

CPLC could not acquire an interest in the Cotenant Properties adverse to the Proctor heirs through a tax sale.  Instead, CPLC's reacquisition following the tax sales, inures to the benefit of all cotenants.  Accordingly, title to a one-quarter interest in the Subsurface Estate of the Cotenant Properties belongs to the PHT.

## CONCLUSION

For the foregoing reasons, the PHT respectfully requests that the Court grant its motion for summary judgment, enter an order quieting title to the Subsurface Estate of the No Sale Properties, the Separately Assessed Properties and the Cotenant Properties in favor of the PHT, and grant any other relief that this Court deems just and appropriate.

Dated: January 8, 2021

Respectfully submitted,

/s/ *Laura A. Lange*
Laura A. Lange
   Pa. ID No. 310733
1670 Sturbridge Drive
Sewickley, PA 15143
lange@proctortrust.com

Justin G. Weber (PA 89266)
TROUTMAN PEPPER
Suite 200, 100 Market Street
P.O. Box 1181

Harrisburg, PA 17108-1181
717.255.1155
717.238.0575 (fax)
Justin.Weber@troutman.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE:

I hereby certify that the foregoing brief complies with the 5,000-word word-count limit, in that it contains 4,833 words, computed using the word count feature of Microsoft Word.

Dated:  January 8, 2021          */s/ Laura A. Lange*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court today via the Court's CM/ECF, and that, pursuant to Local Civil Rule 5.7, participants in the case who are registered ECF users will be served by the ECF system.

Dated:  January 8, 2021          */s/ Laura A. Lange*